693 P.2d 979

**Ricky AMOS, Petitioner/Appellee,**

**v.**

**The Honorable Ann BOWEN, Judge of the City Court of the City of Tucson, State of Arizona, Respondent,**

**and**

**STATE of Arizona, ex rel. Frederick S. DEAN, City Attorney for the City of Tucson, Real Party in Interest/Appellant.**

**No. 2 CA–CIV 5052.**

Court of Appeals of Arizona, Division 2.

Dec. 19, 1984.

Stephen Paul Barnard, Tucson, for petitioner/appellee.

Frederick S. Dean, City Atty. by Frank W. Kern III, Tucson, for real party in interest/appellant.

## OPINION

HATHAWAY, Judge.

Appellee was charged in Tucson City Court with driving while under the influence of intoxicating liquor or drugs (DUI) in violation of A.R.S. § 28–692 on October 29, 1982. A defense motion to dismiss, alleging that the police hampered appellee's right to obtain an independent blood test, was denied. Thereupon a special action was filed in Pima County Superior Court, which ruled that the city court judge had abused her discretion in denying the motion to dismiss and remanded the cause to the city court for dismissal with prejudice. Final judgment was entered on October 28, 1983, and the state filed a timely notice of appeal raising the following issues:

1. Did the superior court have jurisdiction to accept the special action, since the petitioner had an adequate remedy by appeal?

2. Did the superior court err in finding on the record before it that the trial court abused its discretion?

3. Did the police officer who stopped for an emergency situation while transporting appellee for a blood test unreasonably interfere with appellee's opportunity to gather exculpatory evidence?

4. Did the appellee knowingly and voluntarily waive his right to have a blood test?

On October 29, 1982, in the vicinity of the intersection of Ft. Lowell Road and Stone Avenue, appellee was observed by Officer Carrillo to be traveling in excess of the posted speed limit. Officer Carrillo followed appellee and clocked his vehicle at approximately 40 to 50 mph in a 35 mph speed zone. Appellee was stopped for speeding and not having tail lights.

The officer observed that appellee was unsteady on his feet and that a strong odor of marijuana and alcohol emanated from his person. The officer testified that he then advised appellee of his *Miranda* rights and was advised that appellee understood the rights and would answer questions. Appellee denies that he was so advised and that he thereafter consented. In any event, the officer testified that appellee admitted to having smoked marijuana and to having drunk three or more beers. Appellee was given field sobriety tests, and after he flunked them was placed under arrest under § 28–692 for driving under the influence of alcohol and drugs. Arrangements were made for appellee's brother to come to the location and take his vehicle.

Appellee was transported to the Tucson Police Station, where he was advised of the implied consent law and submitted to an intoxilyzer test. He was also advised of

his right to the preservation of the breath sample, and to an independent blood test. Appellee waived his right to the preservation of the breath sample, but stated that he wanted an independent blood test and signed the intoxilyzer test checklist to that effect.

Since appellee had furnished no permanent address, Officer Carrillo undertook to take him to the court volunteer center for a pre-booking release interview, but since appellee might not have qualified for release, Officer Carrillo undertook first to transport him to Kino Hospital for the independent blood test. En route to the hospital, an assault was observed in progress at Fourth Avenue and 22nd Street. Screams for help were heard from a vehicle, where a man was seen struggling with a woman. The woman exited the vehicle screaming, "Help! Help! He's killing me!" Backup assistance was radioed for immediately, and Officer Carrillo exited his vehicle in an attempt to bring the situation under control. A fight ensued between Officer Carrillo and the driver before help from a civilian resulted in the arrest of the assailant. Officer Carrillo then administered an intoxilyzer test to this arrestee using the mobile unit which he carried in his police car. He then completed his part of the investigation, and after approximately a two-hour delay, returned to his vehicle where appellee was required to stay during the incident. Officer Carrillo then commented that they would proceed to the hospital, but appellee decided that he no longer wanted the test. He was thereupon transported to the court volunteer center where he was accepted, and a phone call was made for him.

▆▆▆ Appellant first challenges the superior court's decision to accept the special action. That decision is discretionary and will not be set aside unless an abuse of discretion is shown by the party challenging acceptance of jurisdiction. *Wicks v. City of Tucson*, 112 Ariz. 487, 543 P.2d 1116 (1975). Special action jurisdiction may be assumed to correct a plain and obvious error committed by the trial court. *State*

*ex rel. Collins v. Superior Court of State of Arizona*, 129 Ariz. 156, 629 P.2d 992 (1981).

▆▆▆ *McNutt v. Superior Court of State of Arizona*, 133 Ariz. 7, 648 P.2d 122 (1982), notes that constitutional standards afford a DWI suspect the right to obtain an independent blood test. *Smith v. Cada*, 114 Ariz. 510, 562 P.2d 390 (App.1977). In *McNutt*, the court held that an affirmative state interference with the arrestee's right to consult in private with an attorney, resulting in the arrestee's being unable to collect exculpatory evidence, requires dismissal. The facts of the instant case were sufficiently similar to *McNutt* for the superior court to reasonably conclude that the city court's decision could not be justified and to warrant an exercise of jurisdiction. *Western Waste Services Systems, Inc. v. Superior Court*, 120 Ariz. 90, 584 P.2d 554 (1978). Moreover, the city court denial of appellant's motion to dismiss was not appealable because no final order had issued. The only remedy available was through special action. We find that the superior court did exercise proper discretion in accepting jurisdiction.

Appellant next contends that there is no evidence that the city magistrate abused her discretion in her ruling, arguing that as the trier of fact she had the opportunity to view the evidence, weigh the credibility of the witnesses' testimony and judge other facts before the court. The difficulty with appellant's position, however, is that the problem does not lie in an evidentiary dispute, but rather in an application of the law. It is undisputed that appellee was delayed a period of two or more hours in the process of proceeding to obtain an independent blood test. Appellant argues that the police have no duty to assist a defendant to gather exculpatory evidence, acknowledging that they may not interfere with his ability or opportunity to do so. In this connection, appellant quotes from *Smith v. Cada*, supra, the following fundamental proposition:

" [P]olice officers are not required to take the initiative or even to assist in

procuring any evidence on behalf of a defendant which is deemed necessary to his defense. [citations omitted]. But in no event can duly constituted authority hamper or interfere with efforts on the part of an accused to obtain a sampling of his blood, without denying to him due process of law.' " 114 Ariz. at 512, 562 P.2d at 392 (quoting *In re Martin*, 58 Cal.2d 509, 24 Cal.Rptr. 833, 374 P.2d 801 (1962)).

Appellant looks further to *Cada* for the standard by which impermissible interferences are to be measured, pointing out that one's right to due process is violated,

> " 'if ... the authorities, by their actions or regulations, frustrate ... *reasonable efforts designed to produce probative evidence.*' " 114 Ariz. at 513, 562 P.2d at 393 (quoting from *In re Martin*, 58 Cal.2d 509, 24 Cal.Rptr. 833, 374 P.2d 801 (1962)). (Emphasis added).

The court also considered the standard of "unreasonable interference" in the companion case to *Cada*, supra, *Smith v. Ganske*, 114 Ariz. 515, 562 P.2d 395 (App.1977), where Division One stated:

> "What then is critical is whether Ganske, under the restraint and detention evidenced here, was afforded a fair chance to obtain independent evidence of sobriety essential to his defense at the only time when it was available." Id. at 517, 387, 562 P.2d 395.

We believe appellant is skewered upon his own references.

■ *Smith v. Cada*, supra, and *McNutt v. Superior Court*, supra, specifically hold that an unreasonable or unconstitutional interference with attempts to secure a blood sample for exculpatory purposes in a DWI prosecution under A.R.S. § 28–692 requires a stay or dismissal of the charge as a remedy. The affirmative conduct of the police clearly violated appellee's right to obtain exculpatory evidence, as measured by the "fair chance" standard of *Smith v. Ganske*, supra. It is undisputed that appellee was detained in the police car while Officer Carrillo was engaged in other duties relating to the assault incident. Al-

though Officer Carrillo properly stopped to intercede in the matter, the delay reasonably caused appellee to change his mind as far as wanting a test. Whether arrangements could have been made by Officer Carrillo for someone else to transport appellee for the test or to relieve him from further attendance at the scene of the assault is a matter we need not speculate upon.

■ *Oshrin v. Coulter*, 142 Ariz. 109, 688 P.2d 1001 (1984), is inapplicable to the instant case, where an interference with a constitutional right to an exculpatory blood test is at issue, as opposed to the destruction of the second intoximeter breath sample occurring in *Oshrin*. The purpose of the second breath sample is to test the reliability of the first sample. 142 Ariz. at 111, 688 P.2d at 1003. If the state unreasonably interferes with the production of the second sample, then a well-tailored remedy for such a violation of fundamental fairness is to suppress the state's evidence of the first breath sample. In such a case, the charge under § 28–692(B), driving with a blood alcohol level over 0.10, to which the breath test goes, must be dismissed. This is the remedy in *Oshrin*. Yet prosecution of the state's charge under § 28–692(A) is allowed under *Oshrin*. In appellant's case, in contrast, the violative state action interfered with appellant's right to exculpatory evidence which could refute a charge under both § 28–692(A) and (B). The only proper remedy in the instant case, therefore, is dismissal of the entire charge.

■ Finally, appellant contends that the appellee waived his right to an independent test. The waiver argument is premised on appellee's declining the test after the passage of the time while awaiting Officer Carrillo's resumption of the trip to Kino Hospital. The test was obviously declined because of the passage of time during which the usefulness of such a test was eroding and had eroded to such an extent that it is highly questionable whether it would have been of any use as exculpatory

evidence. We find the waiver argument ludicrous and decline to address it further.

The judgment is affirmed.

BIRDSALL and HOWARD, JJ., concur.